# The American Mortgage Co. of Scotland (Limited) v. Wright.

### Statutory Action of Ejectment.

1. *Infants; ratification after attaining majority.*—A contract by an
infant, being merely voidable and not void by reason of the infancy,
is subject to ratification after attaining majority, and any declara-
tions or acts by the infant, after arriving at full age, that clearly re-
cognize the existence of the contract as a binding obligation, will
constitute a ratification, although at the time of the declaration made
or the act done the infant did not know that he or she had a right to
avoid the contract.

2. *Execution of mortgage by infant; ratification by payment of interest
notes.*—Where a mortgage is executed by an infant as security for
money loaned, the payment, after arriving at full age, of the interest
notes as they mature, is a ratification of the voidable contract, which
thereafter becomes a binding obligation.

APPEAL from the City Court of Gadsden.
Tried before the Hon. JOHN H. DISQUE.

· This was a statutory real action in the nature of ejectment, brought by the appellant against the appellee. The title to the property involved in this suit was derived from a mortgage, which was executed by the defendant to the plaintiff, to secure a note given for money loaned by the plaintiff to the defendant payable five years after date, and also to secure the payment of the interest coupons on said debt which were payable annually. The facts of the case are sufficiently stated in the opinion.

. The cause was tried without the intervention of a jury, and upon hearing all the evidence, the court rendered judgment for the defendant; and from this judgment plaintiff appeals, and assigns the rendition thereof as error.

CALDWELL BRADSHAW and LOMAX PITTMAN, for appellants, cited *Morse v. Wheeler*, 4 Allen 570; *Anderson v. Soward*, 40 Ohio 325 ; *Clark v. Van Court*, 100 Ind. 113 ; *Taft v. Sergeant*, 18 Barb. 320 ; *Ring v. Jamison*, 66 Mo. 424.

DORTCH & MARTIN, *contra*.

STONE, C. J.—Mrs. Wright, *nee* Griffin, as the uncontroverted testimony shows, was born June 17, 1864. She executed the mortgage, the title on which the present suit was sought to be maintained, and the notes it was given to secure March 12, 1885—three months and a few days before she attained her majority. The defense relied on was infancy, and it was sought to escape its force by replying that, after she became of age, she ratified the act, and made it binding. The question was ratification *vel non*. We say this was the question, because the testimony adduced proves it. Neither the plea nor the ratification is shown in the pleadings. It is desirable that such issue as this should be distinctly presented.

The notes and mortgage were given to secure the repayment of money borrowed. The loan was on five years time, and one note was given for the principal, made payable at the end of five years. Coupon interest notes were given, payable yearly. The last interest coupon matured March 12, 1890. All the notes were secured by the mortgage. The mortgagor paid the interest for the

first four years on the maturity of the several coupons, but refused to pay the principal and the fifth coupon. Thereupon the present suit was instituted.

The defendant, Mrs. Wright, testified "that she paid the plaintiff all of the coupons mentioned in the mortgage as they matured, with the exception of the one maturing on the 12th day of March, 1890, introduced in evidence by plaintiff. That she did not know until January, 1890, when she was so informed by a lawyer, that the mortgage was invalid, and that she could avoid the payment of it, because she was a minor when the same was executed; and that after she learned that, she decided not to pay, and never paid anything after she knew she was not bound by the contract." Plaintiff objected to that part of the testimony of this witness, in which she stated her want of knowledge of the result of her acts in making payments on said debt until January, 1890; the objection was overruled, and an exception reserved. The court gave judgment for defendant, and plaintiff excepted.

The contract being entered into by Mrs. Wright before she was 21 years old, the question arises, was her want of knowledge that she had power to repudiate the obligation a sufficient excuse for the payments of interest on the loan, which she testifies she made? Does her ignorance of her legal right to renounce the contract on attaining her majority, arm her with the power to exercise that right whenever she is informed she possesses it, and this, notwithstanding any acts she may have done, pointing to ratification, anterior to receiving such information?

There are decisions which answer this inquiry in the affirmative; and this court, in *Flexner & Lichten v. Dickerson*, 72 Ala. 318, speaking of ratification of a contract entered into during infancy, said it could be done "only by an express confirmation, or new promise voluntarily and deliberately made, by the infant upon coming of age, and with knowledge that he is not legally liable." We suppose this decision had a material bearing in the decision of the case we have in hand. The assertion that to be binding the act claimed as ratification must be done "with knowledge that he is not legally liable," was dictum; for the opinion had asserted, that "The record contains no evidence tending to prove a ratifica-

tion by the defendants of the contract of renting.'' Still, there are authorities, English and American, which sustain that dictum.

There are two lines of decisions bearing on the inquiry of what acts of ratification of an infant's contract, done after reaching majority, will preclude him from interposing the defense of infancy. Following the older dicta on the subject, one of these lines ''holds that an infant's contract imposes no legal liability on him until ratified after full age has been attained, and such ratification must have all the elements of a new contract except a new consideration. There must be an express promise, or such acts after the infant becomes of age, as practically lead to the conclusion that he intended to ratify the contract and pay the debt. Such a debt is regarded as standing on the same footing as a debt that has been destroyed by a discharge in bankruptcy, and not as one that is barred by the statute of limitations.''—10 Amer. & Eng. Encyc. of Law, 644–5; *Edmunds v. Mister*, 58 Miss. 765; *Tibbets v. Gerrish*, 25 N. H. 41; *Wilcox v. Roath*, 12 Conn. 550. See also, Tyler on Infancy, pp. 84–87, and authorities; Bishop on Contracts, § 943; *Thrupp v. Fielder*, 2 Esp. 628; *Thompson v. Lay*, 4 Pick. 48; *Benham v. Bishop*, 9 Conn. 330; *Goodsell v Myers*, 3 Wend. 479; *Hinely v. Margaritz*, 3 Penn. St. 428; *Ford v. Phillips*, 1 Pick. 202; *Hale v. Gerrish*, 8 N. H. 374; *Thing v. Libbey*, 16 Me. 55; *Turner v. Gaither*, 83 N. C. 357, 35 Amer. Rep. 574. So, there is a strong array of authorities in favor of this severer and more exacting rule.

''The other line of cases lays down the rule that the contracts of infants are only suspended during minority, and may be ratified on full age upon the same principles and for the same reasons as a debt barred by the statute of limitations may be revived. Therefore, a new promise, positive and precise, equivalent to a new contract, is not essential, but as the words 'ratify' and 'confirm' necessarily import that there is something in existence to which ratification or confirmation can attach, any words or acts by the infant, after arriving at full age, that clearly recognize the existence of the contract as a binding obligation, will constitute a ratification.''—10 Amer. & Eng. Encyc. of Law, 645–6. This latter statement of the rule is supported by a respectable array of authorities, and the author expresses his approval of it in the

following language : "This latter rule seems more consonant with principle and with the tendency of the modern cases, holding that the infant is insufficiently protected by a right to avoid his contracts, which are valid until avoided."—*Henry v. Root*, 33 N. Y. 526. Speaking of the alleged principle that to constitute a binding ratification, it is essential that the promise or act should be given or done with knowledge that he is not legally liable on the contract, this author, on p. 648, says : "It is not necessary to the validity of the ratification that the person lately an infant should be aware of his right to avoid his contract ; ignorance of the law gives him no excuse." To this he cites several authorities, and among them Wharton on Contr., § 57, who speaks in strong condemnation of the alleged doctrine. To the same effect see 7 Wait Act. & Def. 138; *Morse v. Wheeler*, 4 Allen 570. A very instructive discussion of this question will be found in Ewell's Leading Cases, note to *Hale v. Gerrish*, commencing on p. 173.

In Alabama we have not adopted the exacting rule, but have held that all contracts of infants, with a very limited exception, are simply voidable—not void.—*Jefford v. Ringgold*, 6 Ala. 544; *Thomasson v. Boyd*, 13 Ala. 419; *West v. Penny*, 16 Ala. 186; *Shropshire v. Burns*, 46 Ala. 108; *Philpot v. Bingham*, 45 Ala. 435; *Flexner v. Dickerson*, 72 Ala. 318; *Sharpe v. Robertson*, 76 Ala. 343. We think we better carry into effect the policy declared in our decisions, and better subserve the purposes of justice by holding, as we do, that contracts of infants, such as we have in hand, are simply voidable, not void, by reason of the infancy ; that it is a defense he may or may not make, at his option ; that an express promise to pay is not the only method by which the defense may be precluded, but any other declaration or act which satisfies the trying body that the liability or contract duty is still binding and intended to be complied with, if voluntarily done, or entered into, completely neutralizes the defense of infancy ; and that it is not necessary to a binding ratification that the party sought to be charged knew, at the time the promise was made, or act done, that he or she had the right to avoid the contract. All men are presumed to know the law, and no one will be heard to plead ignorance of it.

According to Mrs. Wright's testimony, her first hus-

band, Griffin, died on June 13, 1885, only 3 or 4 days before she reached her majority. He died in Florida. She testified further "that the expense of the trip to Florida, together with the removal of his remains to this (Etowah) county, and the interment of them here, consumed the $500 borrowed from plaintiff." Now it would be very extraordinary if she paid all these funeral expenses, or any part of them, within the few days before she became 21 years old. It she did not, then she utilized and converted a part of plaintiff's money after she attained her majority. The record is silent as to when she paid out the money. She does, however, testify that she paid all interest coupons, save the last, when they matured. They matured severally, four of them, on December 1, 1885, 1886, 1887, 1888; and the last, or unpaid one, on March 12, 1890. Each represented the amount of accrued interest on the $500 borrowed, up to the times they severally matured. If she did not owe the $500, she did not owe the interest coupons, for they had no other consideration than the forbearance of that debt. Each payment was an acknowledgment that the contract was binding. Defendant had ratified the voidable contract, and the judgment ought to have been in favor of the plaintiff. We have not the means of rendering a proper judgment here.

Reversed and remanded.